CHARLES A. KITTREDGE *v.* THE TOWN OF WALDEN.

*Town Meeting.    Warning.    Vote.    Bounty.*

The defendant town voted " to pay each volunteer who should be mustered into the United States service, under the call of the President of October 17th, 1863, for three hundred thousand men, the sum of $300.," in pursuance of the following articles in the warning:

*Art.* 2d.   " To see if the town will vote to raise money to pay bounties to such men as will enlist under the last call of the President for three hundred thousand men."

*Art.* 3d. " To see what other action the town will take in relation to raising their quota of men under said call."

*Held,* that the action of the town was within the scope of the warning, and was authorized under the laws of the state.

The plaintiff having been mustered in to apply on the quota of the defendant town under said call, the fact that more than men enough to fill such quota were mustered in with him, *at the same time,* does not affect his right to recover.

ASSUMPSIT to recover a balance of a bounty. Plea, the general issue and notice, and trial by jury at the June Term, 1867, STEELE, J., presiding.

The plaintiff enlisted September 29th, 1863, in a new organization called the third Vermont battery, light artillery. He enlisted to the credit of the town of Walden; was mustered in January 1st, 1864, and served regularly until honorably discharged. He was mustered in under the President's call of October 17th, 1863. The quota of Walden, under that call, was fifteen men. The plaintiff introduced in evidence a warning and record of a town meeting of December 4th, 1863, at which, among other things, it was " voted to pay to each volunteer, who should be mustered in under said call, the sum of three hundred dollars."

At the time of this vote the plaintiff and eight other. citizens, of Walden, who had enlisted to the credit of that town in said battery, were in camp at Burlington awaiting muster. There was then in force an order of the war department that no men enlisted in new organizations should be accepted under this call; the object of the call being to replenish the old regiments in the field. Measures were being taken to procure a modification of this order, and the selectmen of Walden expressed their readiness to pay these battery recruits, provided they could apply on their quota under that call; but not being certain that the order would be modified enlisted fifteen men, but two were rejected.

After this, in December, while two men were lacking to fill the quota of Walden, the said order of the war department having been so modified that recruits of new organizations mustered prior to January 5th, 1864, would be credited under said call, the plaintiff came to Walden and called upon two of the selectmen and requested to be permitted by them to change his place of residence in his enlistment

contract, so that he might draw a bounty from some other town, and informed them that with their consent he could be allowed to alter his paper so as to pass to the credit of some other town. At the same time he preferred the same request on behalf of the other battery recruits from Walden. The said selectmen declined to give their consent. The plaintiff's evidence further tended to show that on the occasion of this interview he insisted that if he was not permitted to pass to the credit of any other town he should claim the three hundred dollars bounty, and that the selectmen agreed it should be paid to him if he applied on that call, and that they proposed to divide the money then in their hands for the two lacking men between the nine battery recruits, to apply on three hundred dollars bounty to be paid each if they applied on that call; which would give the plaintiff sixty-six dollars and sixty-six cents; and that he subsequently accepted that sum to be so applied. The defendant's evidence tended to show that the plaintiff and selectmen made an agreement that the six hundred dollars in the hands of the selectmen should be divided between the nine battery recruits in full discharge, and payment of all claim, on their part, against the defendant town, and that, satisfied with that promise, the plaintiff and the other battery recruits were mustered in, and that the plaintiff accepted and receipted the sixty-six dollars and sixty-six cents in full payment. After the interview, in December, the plaintiff went back to Burlington, and on the 1st day of January, 1864, and while two men were lacking to fill the defendant's *quota*, under said call, the plaintiff was mustered in under that call to the credit of Walden. At the same time the other battery recruits from Walden were mustered in; the muster in of all who were finally accepted being simultaneous. The town took no measures to otherwise fill their deficiency of two and the muster in of these men not only filled that deficiency, but gave them an excess under that call, of which the town received the benefit by a credit, which went to reduce their quota under subsequent calls when bounties were higher.

The court was requested to direct a verdict for the town, which claimed the plaintiff could not recover because he did not enlist under this call, and because the warning did not warrant the vote, and

Kittredge *v.* Walden.

because the vote must, in any event, be construed to relate only to the muster-in of men who should enlist subsequent to the vote. The court refused to direct a verdict for the defendant, and decided that the vote was pursuant to the warning, and related to men whose enlistments should become available to the town by a subsequent muster-in, — to which the defendant excepted. The defendant claimed that the plaintiff could only recover upon proof of a contract with the selectmen within their authority; and that if any was proven in this case it was a contract to pay nine men when the town owed but two, and, therefore, beyond the authority of the selectmen. But the court ruled that the vote was a general offer, and that under it no contract with the selectmen was necessary,—to which the defendant excepted.

The defendant claimed that the selectmen had no authority to permit the plaintiff to change his residence upon his enlistment contract so as to pass to the credit of some other town; and that the plaintiff could in no event recover without proving that he applied on the defendant's *quota*, and that he had not made such proof because the other battery men were mustered in at the same moment, and all applied as much as one. The court decided, that whether or not under the vote the offer was generally to be considered as limited to the *quota*, (it appearing here that the *quota* was not full when the plaintiff was mustered in, and that the plaintiff had notified the selectmen of the town of the condition of things, and had offered and requested to be mustered in to the credit of some other town, and had been held by the defendant town,) the plaintiff's recovery would not be defeated by the fact that other men were with the knowledge of the town presented for muster to their credit at the same moment; so many were accepted as to make an excess above their quota,—to which the defendant excepted. The court instructed the jury that although no contract was necessary under this vote, still if the plaintiff before his muster made one with the selectmen he would be bound by it, and, therefore, that if they should find in accordance with the evidence on the part of the defendant, that the plaintiff agreed with the selectmen that if they would divide six hundred dollars between him and the other eight battery recruits he

Kittredge v. Walden.

would be satisfied and mustered in to the defendant's credit, then, in that case, the plaintiff could not recover. But if they should find that the plaintiff did not make such an agreement, and only accepted the sixty-six dollars and sixty-six cents as part of the money due him, as his evidence tended to show, and notified the defendant's selectmen that he should claim the three hundred dollars unless they would permit him to be mustered to the credit of some other town, then, in that case, the plaintiff would be entitled to recover, even though the selectmen never promised the plaintiff to pay him,—to this instruction, so far as it is favorable to the plaintif, the defendant excepted.

Verdict for the plaintiff, exceptions by the defendant.

*Bliss N. Davis*, for the defendant.

The county court ruled that the vote was a general offer, and that under it no contract with the selectmen was necessary. That is, the town, by the *vote*, entered into a contract with any and every volunteer who enlisted before the call and warning, or after, and passed to the credit of the town, to pay such volunteer a bounty of three hundred dollars.

The *vote* was not like a general *offer* to pay a reward to any person who may apprehend an offender. In that case, however, there is an engagement as *certain* and *final* as circumstances will allow. See Chitty on Con., note g., p. 10, citing *Williams* v. *Carwardine*, 5 C. & P. 566 ; 4 B. & Ad. 621, S. C. ; 3 Wend. 30.

The warning was to see if the town will *vote* to raise money to pay bounties to such men as will enlist under the last call of the President for three hundred thousand men.

The *vote* was to pay each volunteer who should be mustered into the United States service, under the above named call, the sum of three hundred dollars.

The town, by its vote, could not depart from the fair scope and intention of the warning ; and it certainly could not have been the intention of the town to pay the bounty to men who enlisted before the *call* and *vote* " who should become available to the town by a subsequent muster-in," unless by a *contract* the volunteer answered

in this precise quota. Otherwise the eight other battery men are entitled to this bounty; and if they are entitled without a contract, any other one hundred men who happened to hear of this vote and pass themselves to the credit of Walden, are also entitled to the same bounty.

When there were only two men needed to fill the quota, and no contract with this plaintiff to fill up one vacancy, and he is mustered in at the same moment of time with eight others, can he claim the benefit of one of the vacancies, and if so, which of the other recruits can claim the benefit of the vacancy, or can all claim the bounty, or will the two who happen to sue first obtain.

If all can claim the bounty, any other twenty or one hundred men may claim the same, which would be an unnatural extension of the town's liability under their vote. If not all, will the court undertake to say which one is entitled.

The refusal to allow the men to be passed to some other town for a bounty might not be fair; but would it raise a promise to the plaintiff so as to save proving an express promise.

Possibly an action on the case might be a remedy for the refusal, but how an implied promise can be made out of the refusal is not so clear.

*J. Ross* and *R. H. Start*, for the plaintiff.

I. The vote of December 4th, 1863, "to pay to each volunteer who should be mustered in under the call of October 17th, 1863, three hundred dollars bounty," was authorized by the article in the warning for that meeting, and in terms comprehended the plaintiff as one who should receive a bounty.

II. Under that vote no special contract between the plaintiff and selectmen of the town was necessary to enable the plaintiff to recover a bounty. The most that could be required of the plaintiff to entitle him to recover the bounty voted, would be that he notified the town through some of its agents of his intention to comply, and his actual compliance with the vote. This he did by notifying the selectmen themselves that he had enlisted to the credit of the town of Walden.

III. The plaintiff's notice to the selectmen that if he went to the

credit of the town on the then pending call he should claim the three hundred·dollars bounty, and the refusal of the selectmen to permit the plaintiff to change his credit of enlistment to some other town amounted to an acceptance, on the part of the town, of the plaintiff as one of the men to be applied on said quota, and entitled him to the bounty voted.

The opinion of the court was delivered by

BARRETT, J.    The plaintiff enlisted September 23d, 1863, in a new organization, third Vermont battery, light artillery, to the credit of Walden, but was not mustered in till January 1st, 1864.    October 17th, 1863, the President called for three hundred thousand men ; of which the quota of Walden was fifteen men.    Down to the 25th or 26th of December, 1863, enlistments to such new organization could not apply on that *quota.*    At that time the order precluding such application was rescinded, and Walden was then lacking two men on that quota.    While that order was in force the plaintiff had applied to and urged the selectmen to permit him to change his residence as to place of enlistment, so as to be credited to some other town.    They refused to do so, and insisted on his continuing to the credit of Walden.    He had an interview with them on the 25th or 26th of said December, after which, as the exceptions state, "the plaintiff went back to Burlington, and on the 1st day of January, 1864, and while two men were lacking to fill the defendant's quota of fifteen men, under the call of October 17th, 1863, the plaintiff was mustered in under that call to the credit of Walden."    On the 4th of December, 1863, the town had voted " to pay each volunteer who should be mustered into the United States service, under the above named call, the sum of three hundred dollars."    The plaintiff in being thus mustered in fell exactly within the terms of that vote.

The only question then is, whether that vote was so in pursuance of the warning as to be valid?    Article second of the warning was, " to see if the town will vote to raise money to pay bounties to such men as will enlist under the last call of the President for three hundred thousand men."    Article third was, " to see what other action the town will take in relation to raising their quota of men under said

15

call." This warning gave notice that the subject of raising men to fill that quota was to be acted on, not in any defined and exclusive manner, but in such manner as should be judged best when met, and determined by the votes then to be given. The action of the town was within the scope of the warning, and it was such as the town, under the laws of the state, was authorized to take. Inasmuch as the plaintiff was mustered in on that call to the credit of the town by the co-operation of the selectmen who had full knowledge of all the facts, and were expressly told by the plaintiff that he should insist on the pay voted as above, viz : three hundred dollars, in case they would not permit him to be mustered in to the credit of some other town, and he should be mustered in to the credit of that town, it seems to us that the town became bound both by said vote, and by the action of the selectmen under it, to pay the plaintiff that bounty.

The fact that other men, standing in the same position as the plaintiff, were mustered in to the credit of the town, more than enough to fill the quota, cannot derogate from the plaintiff's right, he having practiced no fraud, and the selectmen having full knowledge of all the facts, and the plaintiff having no control of the mustering in of those other men.   " The plaintiff was mustered in under that call to the credit of Walden."

Entertaining these views we have no occasion to discuss the case in any other aspect, or to decide any other questions.

The judgment is affirmed.