# LYCOMING FIRE INSURANCE CO. v. MEDAD WRIGHT & SON.*

*Fire Insurance.    Foreign Insurance Company.    Evidence.
Presumption.  Laws of Another State, how proved.
Act of 1874, No. 1, ss. 1, 2 ; R. L. ss. 3610, 3618.*

1. Parol evidence was admissible to prove that a license had been issued by the secretary of state to a foreign insurance company to do insurance business, when the loss of the license was shown, and there was no law requiring it, or the fact that it had been issued, to be recorded.

2. It is presumed that a foreign insurance company duly filed in the office of the secretary of state a copy of its by-laws, when it was proved that the secretary had issued to the company a license to make insurance contracts, and the statute provided that no license should be issued, until such copy had been filed; as it must be presumed, until the contrary is shown, that the secretary of state did his duty, and would not have issued the license unless the company had complied with the law.

3. In the Act of 1874, No. 1, s. 2, which prohibited a foreign insurance company from taking insurance in this State unless it was " responsible by the laws of the state" in which the company was situated for the acts and neglects of its agents, the word " laws " includes not only the statutory, but the common law of that state.†

---

* Heard May Term, 1887.

† Act of 1874, No. 1, ss. 2, 9 (Rev. Laws, ss. 3610, 3618).  Sec. 2.  All fire insurance companies, other than those chartered by the General Assembly of this State, are prohibited from taking insurance in this State, unless such company or companies shall be responsible by the laws of the State in which such company or companies are situated, or by the Act incorporating such company or companies, or by a proviso to that effect inserted in their policies of insurance, for the acts and neglect of their agents as between said companies and the assured, and, as between said companies and the applicants for insurance therein.

Sec. 9. It shall not be lawful for any (foreign) insurance company embraced in sec. 7 to transact any insurance business in this State, unless such company shall first obtain license of the insurance commissioners, authorizing the company so to do. Before receiving such license, the company shall file with the secretary of state a certified copy of its charter and by-laws, and a full statement, under oath, of its president and secretary, showing the financial condition and standing of the company, in accordance with blanks furnished by him.

Insurance Co. *v.* Wright.

4. In an action by a Pennsylvania insurance company to recover an assessment, one question was, whether the company, under the laws of that state, was responsible for the acts and neglects of its agents, and the court below found from testimony, as matter of fact, that the law of that state was as reported in certain cases in its Supreme Court Reports, which were referred to as part of the exceptions, and rendered judgment for the plaintiff. The cases showed that the company was liable for the neglects of its agents, which under our statute, enabled it to do business here. *Held*, that there was no error.

SPECIAL ASSUMPSIT to recover three assessments upon premium notes. Plea, general issue. Trial by court, March Term, 1887, VEAZEY, J., presiding. Judgment *pro forma* for the plaintiff to recover the amount of said assessment, with interest from date, provided in the charter and by-laws for interest to be paid. Affirmed.

The policy was issued to the defendants October 30, 1875, and ran five years. The plaintiff was admitted to do business in this State in 1870, and a license was issued to it for that purpose, and continued to do business here till 1880.

The exceptions stated that : " The licenses issued to this company were lost. * * * A license was issued to the plaintiff company by the insurance commissioners of Vermont, to do business in this State for the year 1875, and for every subsequent year until 1880. This fact was found upon parol evidence, the licenses being lost," etc.

The court found, that the plaintiff had complied with the statute as to filing papers with the secretary of state or the insurance commissioners, in order to be entitled to a license to issue policies of insurance in this State, but was unable to find, from the evidence produced, that the by-laws of the company had ever been filed with the secretary of state. The policy was made " subject to the Act of incorporation and by-laws of the said company, which are to be used and resorted to to explain or ascertain the rights of the parties hereto in all cases not herein otherwise provided."

A question was made, whether, under the laws of Pennsylvania, where plaintiff company was located, an insurance company of that state was liable for the acts and neglects of its agents, as between the company and the insured. It was

conceded, that there was no statute law of Pennsylvania to that effect, but it was claimed that under the decisions of the highest court of that state an insurance company was so liable at the common law.    An officer of the company but not a lawyer, who had charge of the litigation of the plaintiff in that state, and had for many years made it a part of his business to keep himself familiar with the decisions of that court upon said question, and who testified that he knew what the decisions were in that respect, was allowed, against defendant's objections to testify as an expert as to the law of Pennsylvania upon the point in question.    And he testified that the decisions had been in accordance with the plaintiff's claim, and that the plaintiff company had been so held liable ; and referred to the cases, and produced the volumes of Pennsylvania Reports in which he claimed such had been the rulings, and adopted the same as his testimony as to the law of that state on this question.

The defendants improved Mr. Ashton R. Willard, a practicing member of the Vermont bar, as a witness, upon the same question ; and he testified that he had examined the decisions as reported in the Supreme Court Reports of that state, and that they did not hold as stated by the other witness.    He produced decisions, some of which were the same as referred to by the plaintiff's witness.    The exceptions stated : "As both these witnesses fall back upon the reported decisions of the Pennsylvania courts, as a basis of, and adopt the same as their testimony, as to the law of that state upon the point in question, this court found that the law is as held and reported in the Supreme Court Reports of Pennsylvania."    [Here was the following amendment inserted upon the suggestion of the Supreme Court : "In volumes 4, p. 185 ; 23, p. 72 ; 51, p. 462 ; 75, p. 378 ; 24, p. 320 ; 100, p. 347 ; 83, p. 223 ; 8, p. 464 ; 50, p. 331 ; and in 7 W. & S. p. 348 ; which are referred to as a part hereof."]

Further facts are stated in the opinion of the court.

*Senter & Kemp*, for the defendants.

There can be no recovery, because the plaintiff had not complied with the laws of this State when the premium notes were executed.   The court below failed to find that the company had ever filed a copy of its by-laws with the secretary of state, as required by sec. 9, No. 1, of the Laws of 1874, which was a condition precedent to its right to receive the license.

Section 7 of the same Act prohibits all insurance companies not organized under the laws of this State from transacting business in this State " until all the laws relating to insurance companies in other states, enacted by this State, shall have been complied with."

These conditions constitute a part of the law, and insurance companies cannot qualify themselves to transact such business without compliance with them.    55 Vt. 526.

The insurance policy issued to these defendants refers specifically to and makes the by-laws a part of the contract; these by-laws contain many prohibitions on the assured, and it was very essential that the assured have access to them in case of loss, as they contain the instructions and rules for procedure for the assured in such an event.   As this company had not complied with the requirements in regard to filling its by-laws, the insurance contract made by it in this case was prohibited by law, and the premium notes were void.   *Ætna Ins. Co.* v. *Harvey*, 11 Wis. 394; *Williams* v. *Cheney*, 8 Gray, 206; *Haverhill Ins. Co.* v. *Prescott*, 42 N. H. 547; *Williams* v. *Cheney*, 3 Gray, 215; *General Mut. Ins. Co.* v. *Phillips*, 13 Gray, 90; *Cincinnati Mut. Health Assur.* v. *Rossenthal*, 55 Ill. 85; *Lamb* v. *Lamb*, 6 Biss. 420.

The words " laws of the state " as used in the Act of 1874, mean the positive written statute law of the State.    *Swift* v. *Tyson*, 41 U. S. 16 Pet. 18 (10 L. ed. 871).    See also Bouv. L. Dict. 11, 12; Burr. L. Dict. 11, 32; Abb. L. Dict. 11, 13; *Gelpcke* v. *Dubuque*, 68 U. S. 1 Wall. 175 (17 L. ed. 520); *Delmas* v. *Merchants Mut. Ins. Co.* 81 U. S. 14 Wall, 661 (20 L. ed. 757); *Boyce* v. *Tabb*, 85 U. S. 18 Wall. 546 (21 L. ed. 757).

Agents of insurance companies in Pennsylvania are not responsible to the degree that the Act in question called for.

Agents of a mutual insurance company cannot prejudice the rights of the company by misrepresentations as to the places where risks were located,—as that the company does not take risks in the cities. May, Ins. s. 133 ; *Hackney* v. *Alleghany County Mut. Ins. Co.* 4 Pa. 185. The local agent has no authority to receive notice of loss, and is not bound to communicate it to the company. *Edwards* v. *Lycoming County Mut. Ins. Co.* 76 Pa. 378 ; *Smith* v. *Ins. Co.* 24 Pa. 320. An agent of an insurance company whose duty it is to take surveys, to receive applications for insurance, examine the circumstances of losses, approve assignments and collect assessments, is not authorized to accept notice of over insurance or waive its consequences. *Mitchell* v. *Lycoming Mut. Ins. Co.* 51 Pa. 402. See May, Ins. s. 145 ; *New York Union Mut. Ins. Co.* v. *Johnson,* 23 Pa. 72 ; *Susquehanna Ins. Co.* v. *Perrine,* 7 Watts & S. 348.

*Charles W. Porter,* for the plaintiff.

At the time this contract was executed, the company was licensed by the insurance commissioners to transact business in this State and it is to be presumed that the insurance commissioners had required a compliance with all the provisions of the statute which they, as agents of the State, considered material or necessary to the protection of the public.

The intent of the legislature seems to have been in passing the act of 1874, to declare what financial condition was requisite to enable a foreign insurance company to do business here ; and to enable the courts to get jurisdiction over them. *Saw-yer* v. *North American L. Ins. Co.* 46 Vt. 706.

A failure to comply with a statute of a state does not avoid promise to pay premiums to a foreign company. *Clark* v. *Middleton,* 19 Mo. 53. Whether a statute prohibiting an act renders a contract made in contemplation of the act void depends on whether, in view of the whole statute, the makers

meant that the contract should be void in the sense that it could not be enforced.   *Harris* v. *Runnel*, 53 U. S. 12 How. 79 (13 L. ed. 901) ; *Pangborn* v. *Westlake*, 36 Iowa, 546 ; *Union Gold Min. Co.* v. *Rocky Mt. Nat. Bank*, 96 U. S. 641 (24 L. ed. 650) ; *Union Nat. Bank* v. *Matthews*, 98 U. S. 621 (25 L. ed. 188) ; Morawetz, Corp. ss. 661–666.

It was expressly declared that a contract entered into in contravention of this statute should be valid.   Gen. Stat. chap. 87, s. 13.    And if the contract is valid, the note given as a consideration for it must be valid.  · *Lester* v.  *Webb*, 5 Allen, 573 ; *Hartford L. S. Ins. Co.* v. *Matthews*, 102 Mass. 224.

Although our statutes since 1850 have declared that our home companies should be held responsible for the acts and neglects of agents, our courts have repeatedly defined the limitations of authority of insurance agents.   *Farmers Mut. F. Ins. Co.* v. *Marshall*, 20 Vt. 27 ; *Carrigan* v. *Lycoming F. Ins. Co.* 53 Vt. 418.

Under the decisions of the courts of Pennsylvania, made prior to this contract, an insurance company is liable for the acts and neglects of its agents.   *Lycoming F. Ins. Co.* v. *Woodworth*, 83 Pa. St. 223 ; *Eilenberger* v. *Protective Mut. F. Ins. Co.* 89 Pa. St. 464 ; *Columbia Ins. Co.* v. *Cooper*, 50 Pa. St. 331.

The requirement of the Act of 1874, No. 1, s. 9, that each company shall file with the secretary of state a certified copy of its by-laws, is merely directory.

Members of a mutual insurance company are presumed to know the terms of the charter and the by-laws of the company, and are bound by them.   *Mitchell* v. *Lycoming Mut. Ins. Co.* 51 Pa. 402 ; May, Ins. s. 542 and cases cited.

Whether a statute is mandatory or directory depends upon whether the things prohibited or directed to be done are of the very essence of the thing required.   *Rex* v. *Loxdale*, 1 Burr. 447 ; 81 Pa. St. 349.

But when the particular provisions of a statute relate to

some immaterial matter, where compliance is a matter of convenience rather than substance, they are regarded as directory. 19 Barb. 558 ; 4 Neb. 336 ; *Crosby* v. *School Dist. No.* 9, 35 Vt. 625.

The opinion of the court was delivered by

TAFT, J. Before an insurance company located in a sister state can make a valid contract of insurance in this State, it must obtain from the secretary of state a license for that purpose, and it must be responsible by the laws of the state in which it is situated, or by its act of incorporation, or by contract in its policies, for the acts and neglects of its agents, as between the company and the assured and applicants for insurance. R. L. ss. 3610, 3618 ; 55 Vt. 526. Before receiving such license the company must file with the secretary of state a certified copy of its charter and by-laws, and a statement of its financial condition. R. L. s. 3610. Three questions are presented by the brief for the defendants.

I. Was parol evidence admissible to show the issuing of the license to the plaintiff. The loss of the license was shown. There was no law requiring a license to be recorded, or requiring the fact that one had been issued to be recorded ; it was therefore competent to show the fact by parol.

II. The court found upon trial that a license had been issued to the plaintiff, and that prior thereto a copy of its charter with its financial statement was properly filed, but was unable to find that a copy of the by-laws had been filed with the secretary of state. It was obligatory upon the plaintiff before it was entitled to a license to file a copy of its by-laws. The license was issued. What the effect would be in case the fact was found that no copy of the by-laws was filed, we are not called upon to decide. It does not appear but that a copy was filed, and in the absence of all showing that it was not, we think the case calls for the application of the rule that acts which purport to have been done by public officers in their official capacity, and within the scope of their duty, will be

presumed to have been regular and in accordance with their authority. He who alleges that an officer intrusted with an important duty has violated his instructions must show it. 2 Best on Evidence, Morgan's ed. 622, note 1; *Ross* v. *Read*, 1 Wheat. 482; *Delassus* v. *The United States*, 9 Pet. 117; *R. R. Co.* v. *Stimpson*, 14 Pet. 448. In *Waddington* v. *Roberts*, L. R. 3 Q. B. 579, an action to recover under a deed of composition, a question arose under the Bankruptcy Act 24 and 25 Vict. chap. 134. The deed under that act could not be lawfully registered unless accompanied by a prescribed affidavit. The objection was made that no proof was given that the affidavit which the statute required was filed; but the court said it would "be presumed until the contrary was shown that a public officer acting in execution of a public trust would do his duty, and therefore that the registrar would not have registered the deed unless it was accompanied by the necessary affidavit;" and see *Grindell* v. *Brendon*, 6 C. B. N. S. 698. In Missouri a foreign insurance company is prohibited from carrying on business until it has filed with the insurance commissioner a certificate stipulating that service may be made upon him; and where it is alleged in the petition that a foreign company is doing business in the state, it will be *presumed* that it has complied with the law; *Knapp* v. *Ins. Co.* U. S. Cir. Ct. E. D. Missouri, BREWER, J., 16 Ins. Law Journal, 798, Sept. 1887. It has been held in this State that a public officer, acting under the provisions of a statute, is presumed to have performed his duty until the contrary appears. *U. S. Bank* v. *Tucker*, 7 Vt. 134; *Chandler* v. *Spear*, 22 Vt. 388. To sustain this objection would require us to presume that the secretary of state was guilty of a gross violation of his duty. In the absence of all showing the presumption is that he did his duty, and that prior to issuing the license the by-laws had been filed in his office.

III. Was the plaintiff responsible by the laws of Pennsylvania, between it and the assured and applicants for insurance, for the acts and neglects of its agents? What the law of the

state was, was a question of fact for the County Court to pass upon. It did so by finding that the law was as reported in certain cases in the Supreme Court Reports of that state, which are referred to as a part of the exceptions. The cases show that the plaintiff was liable for their agents' acts and neglects, between it and persons doing business with it. In *Columbia Ins. Co.* v. *Cooper,* 50 Pa. St. 331, the court say, in speaking of the relations between the company and its agent, that if the assured " has been guilty of no misrepresentation, conceal-ment or fraud, the company had better pay his loss than to attempt to make him responsible for the blunders of their own agent." In *Lycoming Fire Ins. Co.* v. *Woodworth,* 83 Pa. St. 223, the main point relied upon by the company to defeat the action was that the agent was not authorized to make the representations which induced the execution of the premium note ; and the court held that the company was bound by the representations of its agent in the act of making the contract. It is insisted that this liability must be one created by statute. Although the words " laws of a state " are more usually under-stood to mean the rules and enactments promulgated by the legislative authority thereof, as stated by STORY, J., in *Swift* v. *Tyson,* 16 Pet. 1, 18, we think in the present instance that such could not have been the intent of the legislature, nor the meaning of the statute. The act prohibiting the contract un-less the company was responsible, by the laws of the state where it was located, for the acts and neglects of its agents, was originally passed as No. 47, 1850, and applied as well to domestic as foreign companies. It is declaratory of the com-mon law, which made a principal responsible for the acts and neglects of his agents within the scope of his authority. It is argued that the statute means more than the common law ; for if not, why pass it? Its object undoubtedly was to prevent companies from attempting to abrogate the common law by inserting a clause-in their policies or by-laws that an agent, taking an application for insurance, should be deemed the agent of the assured and not of the company. This practice,

which was common at that time, was the evil to be remedied, and it mattered little to the assured whether the liability of the company was created by statute or whether it was a common law obligation resting upon it; in either case the rights of the assured were protected in that respect.

Judgment affirmed.