D. D. Wead *v.* St. Johnsbury & Lake Champlain R. R. Co.

# D. D. WEAD *v.* ST. JOHNSBURY & LAKE CHAMPLAIN RAILROAD COMPANY.

*Railroad companies. Land damages. When road is owned by different company from one constructing. Parol evidence to explain description in deed. Occupation of highway. Public officers presumed to act regularly. Land taken in constructing crossings. Damages for the obstruction of travel. By the collection of surface water. Damages and costs a lien upon rights taken.*

1.  Where a railroad is constructed by one company and subsequently passes into the hands of another, the second company is not, by reason of its possession of the road, liable for any taking of property in the original construction, unless it has entered into the use and possession of the lands so taken.

2.  When the description in a deed refers to two or more objects, parol evidence is admissible to show which object was meant.

3.  The defendant claimed title by virtue of subsequent conveyances under a deed from the orator and others dated March 29, 1882. In this and the later deeds the orator's east line was described as the east line of the highway. For many years before, the east line of the highway at that point as occupied, worked and fenced was in a certain place. In 1845 the highway was resurveyed and the easterly line established in a different place. *Held,* that parol evidence was admissible to show that in fact the east line of the highway as fenced and occupied was never changed in consequence of the resurvey, and that the parties to the deeds through which the defendant claimed, including the railroad company which had originally constructed the road, had always treated the line as fenced as the eastern boundary of the orator's land.

4.  If a railroad company occupies a portion of a public highway with its road-bed, an additional burden is thereby imposed upon the land, and the owner of the fee may recover damages for the taking.

5. But when a railroad company, without objection of the municipal authorities, makes a fill upon a public highway, not for the purpose of supporting its road-bed, but to enable the public to have access to its station, no additional burden is thereby imposed, and no damages can be recovered by the owner of the fee.

6. It appeared that in the construction of the railroad an old highway was occupied, and a new one constructed and used as a substitute, for which the railroad purchased the required lands. It also appeared that the selectmen filed at that time in the town clerk's office a certificate of the survey of the new highway and a vacation of the old one. *Held*, that from these facts it should be presumed that an agreement was entered into between the selectmen and railroad company for a change in the location of the highway agreeably to R. L. ss. 3379–80, for the filing of the certificate could only be proper after the making of such an agreement, and a public officer acting under the provisions of a public statute will be presumed to have done his duty until the contrary appears.

7. It is the duty of a railroad company to construct and maintain sufficient crossings at points where its railroad intersects a public highway. If in so doing it is necessary to raise the bed of the highway an additional burden is thereby imposed upon the land for which the owner of the fee may recover damages.

8. In the construction of such crossing the railroad company may extend the fill outside the limits of the highway, and must make compensation for the additional land so taken.

9. Under R. L. s. 3370, the orator is entitled, upon the facts found by the master, to damages for the obstruction of travel to his store by the construction of the defendant's railroad.

10. If a railroad company by the construction of its embankments and culverts, collects and discharges surface water in such a manner as to injure adjoining lands, it is liable for the damages thereby ensuing, and although this defendant did not construct this railroad originally, nevertheless if it took and maintained it as so constructed it would be liable as of the date when it went into possession.

11. In estimating the damages the master should consider that a part of the land taken was a public highway and a part a private way.

12. The case must be again referred to a master to report specifically the damages to which the orator is entitled in respect of each item.

13. Upon the coming in of an adequate report, a decree should be passed that the defendant is indebted to the orator in damages and costs, for which execution may issue; that the amount of such damages and costs is a lien upon the lands and rights taken, and that the defendant be perpetually enjoined from using and enjoying the same unless payment be made within a time limited.

This was a bill in chancery brought by the orator to obtain compensation for damages done his land by the construction and maintenance of the defendant's railroad.   Heard at the September term, 1890, Franklin county, upon the pleadings, a special master's report, and exceptions by the defendant thereto.   Taft, Chancellor, *pro forma*, overruled the exceptions and decreed that the defendant pay the damages reported by the master.   The defendant appeals.

It appeared that the railroad in question was constructed in the years 1876 and 1877, by the Lamoille Valley Railroad Co.  In 1876 that company issued its bonds secured by mortgage upon its railroad and franchises.   Default having been made, this mortgage was foreclosed and a decree obtained in December, 1879.   The terms of this decree not having been complied with, the mortgage bond-holders formed themselves into a corporation under the name of the St. Johnsbury and Lake Champlain Railroad Company.   That company, being the defendant in this suit, took possession of the railroad on the first day of July, 1880, and has continued to operate the same ever since.   The master found that in the proper use and occupation of the said railroad the defendant had so far maintained, and must necessarily continue to maintain the crossings, approaches, fills, slopes, and embankments now existing in reference to the orator's land.

The questions raised and decided sufficiently appear in the opinion.

*C. P. Hogan* and *H. A. Burt*, for the orator.

In making the fills and embankments reported by the master, and maintaining the same, the defendant has taken the ora-

tor's land within the meaning of the constitution. *Winn* v. *Rutland,* 52 Vt. 481; *Pumpelly* v. *Green Bay Co.,* 13 Wall. 166; *Eaton* v. *B. C. & M. R. R.,* 51 N. H. 104; *Walker* v. *Old Colony & Newport Ry. Co.,* 103 Mass. 16; *Hatch* v. *Vermont Central Railroad Co.,* 25 Vt. 49; *Waterman* v. *Conn. & Pass. R. R. Co.,* 30 Vt. 610.

The necessary approaches to a highway crossing form a part thereof. *Roxbury* v. *Railroad,* 60 Vt. 121; *Burritt* v. *City of New Haven,* 42 Conn. 174, 179.

The maintenance of the fills and embankments within the limits of the highway, imposes an additional burden for which the orator may recover damages. *Williams* v. *N. Y. C. R. R.,* 16 N. Y. 97; *Henderson et al.* v. *N. Y. C. R. R. Co.,* 78 N. Y. 423; *Brainerd* v. *Missisquoi R. R. Co.,* 48 Vt. 107; *Louisville & N. H. R. R. Co.,* v. *Finley,* 86 Ky. 295; 2 Wood Ry. Law, 722 to 723, and cases cited.

The defendant by having maintained these various encroachments upon the orator's land since 1880, is liable for the same as of that date. *Conhocton Stone Road* v. *Buffalo etc., R. R. Co.,* 51 N. Y. 573; *Dodge* v. *Stacy,* 39 Vt. 560; R. L. ss. 3461, 3470-1.

The parol evidence as to the eastern limit of the highway was properly received for the purpose of showing what the parties intended by that description in the deed. *Knight* v. *Heaton,* 22 Vt. 480; *Barnard* v. *Russell,* 19 Vt. 334; *Bagley* v. *Morrill,* 46 Vt. 94; *Tuller* v. *Baxter,* 59 Vt. 467.

*S. C. Shurtleff,* for the defendant.

The grading the highway east of the orator's store does not entitle him to damages. The orator's east line was the east line of the highway which must be established by the survey of 1845, and cannot be otherwise shown by parol evidence. *Smith* v. *Fitzgerald,* 59 Vt. 451; *Closson* v. *Hamlet,* 27 Vt. 728.

But suppose the grading was within the limits of the high way, still the orator cannot recover. The grading of this highway did not in any way interfere with the use of the orator or the public therein. The grading of the highway is not an alteration within the meaning of the statute. *Hutchens et al.* v. *Town of Chester,* 33 Vt. 410.

Neither is it an act for which a town or a railroad company is liable in damages. *Penniman* v. *St. Johnsbury,* 54 Vt. 306; *Richardson et al.* v. *Vt. Central Rd. Co.,* 25 Vt. 465; *Smith* v. *Washington,* 20 How. 135; *Northern Transportation Co.,* v. *City of Chicago,* 9 Otto, 625; *Markham* v. *Mayor,* 23 Ga. 402; *Dunham* v. *Hyde Park,* 75 Ill. 371; *Quincy* v. *Jones,* 76 Ill. 231; *Terre Haute* v. *Turner,* 36 Ind. 522; *Delphi* v. *Evans,* 36 Ind. 90; *Marcy* v. *Indianapolis,* 17 Ind. 267; *Calender* v. *Marsh,* 18 Mass. 416; *Brown* v. *Lowell,* 49 Mass. 172; *Detroit* v. *Beekman,* 38 Mich. 125; *Pontiac* v. *Carter,* 32 Mich. 164; *Hovey* v. *Page,* 43 Me. 322; *McCormic* v. *Patchen,* 53 Mo. 33; *Tate* v. *Missouri,* 64 Mo. 149; *Plum* v. *Canal Co.,* 10 N. J. Eq. 256; *Karst* v. *St. Paul S. & T. F. R. Co.,* 22 Minn. 118; *Fellows* v. *New Haven,* 44 Conn. 240; *New Haven* v. *Sargent,* 28 Conn. 50; *O'Connor* v. *Pittsburg,* 18 Pa. St. 187; *Furman* v. *State,* 17 Wend. 649.

It was the duty of the Lamoille Valley Rd. Co., to grade this highway for the purpose of providing a crossing, and for the discharge of that duty neither that company nor the defendant is liable. *Smith* v. *Washington,* 20 Howard, 135; *The Northern Transportation Co.* v. *City of Chicago,* 9 Otto, 625.

There can be no recovery for an alteration in the flow of surface water. *Abbott* v. *Kansas City,* St. J. & C. B. R. Co. 83 Mo. 271; *Chatfield* v. *Wilson,* 28 Vt. 49; *Beard* v. *Murphey,* 37 Vt. 104.

A change in the grade of a highway made necessarily when a railroad crosses it is not an act for which an abutting landowner can recover damages. *Uline* v. *N. Y. Central R. R. Co.,*

23 A. & E. R. C. 3; *Conklin* v. *N. Y. Ontario & Western R. Co.*, 26 A. & E. R. C. 365, S. C. 101 N. Y. 98; *Ottenot* v. *N. Y. & L. & V. R. Co.*, 23 N. E. R. 169.

TAFT, J. delivered the opinion of the court.

The constitution of this state provides in Chap. I, Art. 2, that "whenever any person's property is taken for the use of the public, the owner ought to receive an equivalent in money." The orator claims that his land has been taken by the defendant for the use of its road. The defendant denies it. Whether it has taken and is now using it, is the question before us upon the report of a special master.

The defendant's road was constructed by the Lamoille Valley Railroad Company about the year 1876, and the taking of the orator's land, if there was a taking, was at that time. The defendant took possession of the road in July 1880, and is not liable in respect of the acts of the Lamoille Valley Railroad Company unless it has taken possession of or used the lands taken by the latter company. There are three pieces of land which the orator claims were taken by the Valley company, and are now in the possession and use of the defendant; viz : one piece lying easterly from his store, on the opposite side, but within the limits of the highway, another piece lying north of his store, between it and a highway on its northerly side, and a third piece in the highway east of, and contiguous to, his store. These pieces are shown by the exhibit called the Tucker plans. * We will first examine the question as to the land lying opposite the store on the easterly margin of the highway. The highway runs north and south on the easterly side of the store, and whether the orator's land was taken depends to a great extent upon the location of the east line of the highway about which the parties are not agreed. The defendant concedes that the orator owns the fee of the land in the highway, and thus the

* The reporter has been unable to obtain this plan.

location of the easterly line becomes important. This piece of land is shown on the plan as the triangle B-C-F, and the margin south of it. The orator claims that the easterly boundary of the highway is the line B-C, the defendant insists that it is the line F-C. The master finds that the east line of the highway and therefore the east line of the orator's land is the line B-C. It is expressly so found unless by the deed from Wead and others to Bruce of the 29th March, 1852, and the other deeds in the defendant's chain of title, the defendant acquired title to the line F-C. These deeds in effect make the boundary of the defendant's land on the east line of the highway. The highway has been open, worked, and traveled for more than sixty years, and during that time the east line of the highway as it has been worked, occupied and fenced has been the line B-C. In the year 1845, the road was resurveyed and established (by a county court commission) with its east line in the line F-C. No actual change was made in the highway as it was used and fenced, as the result of the survey and location in 1845. Its bounds as used after the survey were as they had been prior thereto, and the line B-C was recognized as the east line of the highway by all the parties to the deeds, including the Lamoille Valley Railroad Company. These facts are found by the master, and although by the survey, the east line of the highway was the line F-C, the land owners in conveying lands bounded on the highways, could treat the surveyed line, or the line of the highway as actually occupied and used, as the east line of the highway, and the master, as we construe his report, finds that the parties, including the Lamoille Valley Railroad Company, under whom the defendant claims, did treat the line of the highway as used as the true east line of the highway. Parol evidence was admissible, not to vary the deed, but to explain it, to show the location of the east line, to show whether the parties by the description in the deed, meant one line or the other. Where a description is equally applicable to two or more objects parol evidence is admissible to explain to

which of these objects the description refers. The defendant therefore acquired no title to land west of the line B-C, and the orator owns the fee of the land in the highway, and upon a portion of it, the triangle B-C-F, as shown on the plan, and also on the easterly margin of the highway, south of the triangle and opposite the defendant's station, the Lamoille Valley Railroad Company, when they constructed the road made the embankments shown by the plan, and the master reports they must necessarily be maintained by the defendant so long as it continues to operate the railroad. The defendant does not deny that the Lamoille Valley Railroad Company extended the embankment on to the orator's land in the highway near to and opposite its station, for the master finds that in constructing its road at a point " a little south of the store said company extended its embankment within the admitted limits of the highway." In respect of this claim the defendant insists that this embankment in the highway opposite its station was and is necessary to enable the public to have free access to its station, to pass and repass to and from it; that it was not only its right but its duty, to so grade the highway that it might reasonably serve for that purpose. From the report of the master we cannot tell whether the embankment so made on the easterly side of the highway was made for the sole purpose of an approach to the station, or in part for that purpose, and in part to support, and as a part of, the road-bed; for he reports that the fills and embankments were made for the purpose of providing suitable approaches to said company's station, and to said highway and also as a support to the road-bed, without pointing out which ones were constructed for each purpose. The plan which is in evidence indicates that at the line B-C the embankment is a part of the road-bed, but that nearer and opposite the station it was so made as to render the approach to the station from the highway more easy and feasible. The orator's land which is so embanked upon, is within the limits of the highway, and is subject

to the easment of the public, the right to use it as a highway, but the orator is entitled to recover his damages, if any, which he has sustained by reason of the additional burden placed upon it by the bed of the railroad being located thereon. If the embankment or fill was made solely for the purpose of grading the highway, so that travelers could pass over it to and from the railroad station, we think the defendant is not liable as a taker of land, for the land is not used for any purpose save that for which it was originally taken when the highway was established and for which the owner was presumably paid. A railroad company may, as against the owner of the fee, the municipal authorities not objecting, grade an established highway which is an approach to their station, without being liable to pay the owner of the fee, as of an original taking. No additional burden is placed on the land. Had the municipal authorities graded the approach to the station within the limits of the highway, the orator could not, reasonably, have complained. Why should he object because the railroad company do the work and thus lighten the public burdens ? In respect of this land opposite the store and on the easterly margin of the highway, so far as the filling in the street was made to grade it as an approach to the station, the defendant is not liable ; so far as the fill or embankment is a part of the road-bed, or a support of it; the defendant is liable in respect of the taking.

The orator complains that another piece of his land has been taken. When the road was built in 1876, after passing the store of the orator on its easterly side, it intersected an established highway running east and west on the northerly side of the store, and which at a point northeasterly from the store turned abruptly to the north, and after the intersection the railroad was built upon the highway running northerly. The highway from the point of intersection with the railroad for some distance northerly was taken by the railroad company, its road-bed constructed thereon, and a substitute for the highway so taken was surveyed

and built, beginning at a point thirty feet north of the north-east corner of the orator's store and sixty-eight feet west of the centre line of the railroad, and running in an easterly direction, and in continuation of the highway extending from the creek bridge shown on the plan, to the point of the beginning of the new survey. In October, 1876, the selectmen of the town filed in the town clerk's office a certificate of the survey of the new highway and a vacation of the old one. This certificate, orator's exhibit No. 2, was the only evidence before the master that the town ever accepted the new highway. From this evidence, exhibit No. 2, in which the selectmen certify that they establish the new highway and disestablish the old, the master found that the town did not accept the highway unless the acts of the selectmen, evidenced by the exhibit, constituted an acceptance. The master finds that the railroad company purchased the lands necessarily required for the new road, and the certificate of the alterations made in the highway, signed by the selectmen and recorded in the town clerk's office, was made apparently under section 3379 R. L. This section and the following one, authorizes the selectmen and a railroad company to agree to any alterations in a highway necessary in the construction of a railroad, and a certificate of the alterations when agreed upon must be filed in the town clerk's office. There is nothing in the master's report showing any agreement, but from the fact that the certificate was signed by the selectmen and recorded, which was proper only when the alterations were agreed upon by the parties, (see s. 3379, R. L.) the presumption arises that legal steps were taken in changing the highway, and that the prior proceedings were regular. A public officer acting under the provisions of a statute is presumed to have performed his duty until the contrary appears. *Lycoming F. Ins. Co.* v. *Wright*, 60 Vt. 515. The proceedings in changing the highway were valid. In constructing the highway crossing, it was necessary to raise the grade of the street north of the orator's store, and in so doing the master finds

" that in order to provide suitable approaches to the crossing it was necessary to cart dirt upon the orator's land between the limits of the highway and the store." The railroad company had the right to take this land, and if taken were obliged to make compensation for it. R. L. s. 3380. Making an embankment upon the orator's land in order to widen the highway was a taking of the land, or an easement therein, for the purpose of a highway, and the last named section provides that when compensation is made for such land, " the same shall become part of such way and may be held for highway purposes." It was the duty of the railroad company to construct the crossing and keep it in good and sufficient repair, R. L. s. 3383. In so making the crossing the master finds it took the strip of land between the north end of the orator's store and the highway sixteen and one-half feet wide at its westerly end and fourteen and five-twelfths feet wide at the easterly end. The master finds that this was necessary and still is, to maintain the crossing. If this strip of land, although not a part of the road-bed, was and is a necessary part of the highway crossing, and it is so found by the master, the defendant is liable for the taking of it. Its liability is fixed by the statutes referred to, *et seq.* The master finds it was necessary in order to construct the railroad crossing to raise the level of the street east of and contiguous to the orator's store, and that the fill thus made by the Lamoille Company is a part of the railroad crossing. This fill, therefore, is an additional burden placed upon the land within the highway limits by the construction of the railroad crossing and the orator is entitled to such damages resulting therefrom as he has sustained, as the result of such superadded burden.

The orator insists that he is entitled to damages under that part of s. 3370 R. L. which reads as follows :

" When a railroad corporation in laying out, building, grading or making its roads obstructs the travel or means of access to a manufactory, mill, place of business or dwelling house, the

corporation shall be liable to pay to the person thereby injured such reasonable compensation as the commissioners for determining railroad damages deem proper." The allegations in the bill are specific that by the construction of the defendant's road and crossing, the travel and means of access to the orator's store were cut off and obstructed. The facts reported by the master fully sustain the allegations in the bill, and such damages for such obstruction as are proper should be awarded the orator.

The orator complains of another injury; the master finds that the construction of the road-bed obstructed the flow of surface water from the easterly to the westerly side of the track lying opposite the orator's store; that the Lamoille Valley Railroad Company constructed a culvert to permit the surface water to pass from the east or upper side of the road-bed to the lower side, near the orator's store, and in so doing, and as a result of making the culvert, caused the water which before that time had flowed upon the surface of the land to collect and be discharged in a body upon the orator's land west of the highway. A person is not liable for injuries resulting from the escape of surface water in its ordinary and natural courses, but he has no right to change the course of its natural escape by means of an embankment or otherwise; and if he does, he is liable for the damages that ensue. Nor can he by means of drains, ditches, or culverts, throw the surface water from his own land upon the land of another to the injury of the latter. The defendant did not make the culvert, but it has taken and is using the property of which the culvert is a part and the construction of which rendered the culvert necessary. It is therefore liable for such damages as the orator sustained by reason of the construction of the culvert, as of the time it took possession of the road in July, 1880, and the damages should be assessed as of that date.

For the orator's property thus taken he is entitled to and " ought to receive an equivalent in money." The rule as to damages is stated in R. L. s. 3359, which, in similar cases, pro-

vides for the appointment of commissioners "to determine the damages which the owners of such lands have sustained by the occupation of the same for the purposes aforesaid." In estimating the orator's damages, the fact that the land taken is in part in the highway, and in part used as a private way is a material element in determining the amount; this consideration however is solely for the master appointed to assess the damages.

We hold the defendant liable in the five following respects:

1. As to so much of the easterly margin of the highway, east of and opposite the store, as is used or embanked upon as a part of the road-bed or support thereof.

2. As to the strip of land north of and between the orator's store and the highway used and embanked upon as a part of the railroad crossing.

3. As to so much of the highway east of and adjoining the store as is embanked upon and used as a part of the railroad crossing.

4. As to the culvert under the road-bed.

5. As to the obstruction of travel and means of access to the store.

The report of the master does not show the amount of damages to which the orator is entitled in respect of the five items for which we hold the defendant liable.

The elements of the damages are so commingled, including those resulting from the ordinary running of the defendant's trains and some, in other respects, to which we think the orator is not entitled, that it is impossible to determine the damages from the facts reported. The cause must be remanded and the damages ascertained by a master whose findings should be specific in respect of each of the five items, and upon the coming in of his report the court is directed to pass a decree for the orator that the defendant is indebted to the orator in the amount of such damages with costs, and directing their payment, and that the orator may have execution for the same. That payment of

D. D. Wead *v.* St. Johnsbury & Lake Champlain R. R. Co.

the damages and costs be made a lien upon the lands and rights of the orator taken by the defendant and unless payment is made that the defendant be perpetually enjoined from using, possessing or enjoying the lands, rights in lands, and said culvert as hereinbefore set forth and for which we hold the defendant liable. The details of the decree as to time, manner of payment of said damages, and their collection, and costs, to be determined by the court of chancery.

*The pro forma decree is reversed and cause remanded with mandate.*